Case No. (to be assigned)
JURY DEMAND

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

**SUSAN SELTZER**

*Plaintiff*

v.

**FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.**,

*Defendant.*

## COMPLAINT FOR MATERIAL BREACH OF FINRA
## AWARDS ONLINE TERMS OF USE

### I.    INTRODUCTION

Plaintiff, Susan Seltzer, brings this breach of contract action against FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC. (herein after "FINRA") for its failure to adhere to the Awards Online Terms of Use, which govern the publication and dissemination of arbitration awards. Under these terms, users must first agree to the Terms of Use before accessing awards, and FINRA, as website provider, is obligated to ensure all published awards are lawful, fact-based, and non-defamatory in accordance with the contract.

Despite these obligations, FINRA created a derivative document from the arbitration award, embedding meta tags that linked the award to Plaintiff, Plaintiff's business and personal information. This document was distributed through search engines, such as Google and DuckDuckGo, without requiring users to first agree to the Terms of Use, violating the contractual protections FINRA promised users of its platform.

Further, the award itself was unlawful and non-factual, as it included punitive sanctions under FINRA Rule 12212(c), despite the absence of any Panel Order, notice,

or evidentiary basis for such sanctions. The final dismissal order, issued on July 2, 2018, was based solely on the pleadings of the parties, and no further submissions were authorized. Yet, FINRA altered the award to include post-arbitration filings, without informing the parties, further breaching the Awards Online Terms of Use, only permitting lawful and fact-based documents.

As a result of FINRA's breach, Plaintiff has suffered ongoing reputational and professional harm. Plaintiff seeks injunctive relief requiring the removal of the unlawful award, cessation of metadata tagging, and damages resulting from FINRA's breach of its contractual obligations.

1.  This action arises from FINRA's material breach of its Awards Online Terms of Use[1]. FINRA published an arbitration award[2] containing demonstrably false statements, unsupported by the hearing record, and derived from post-arbitration filings not disclosed to either party. FINRA's publication of this unlawful Award, facilitated by evidence tampering and ongoing metadata manipulation, constitutes a clear violation of its contractual obligations.

2.  This is a pure breach of contract claim under the Awards Online Terms of Service, independent of the arbitration award itself. Plaintiff's breach of contract claim arises from FINRA's operation of the Awards Online platform under its Terms of Use, not from the arbitration award itself. As a condition of accessing arbitration awards, users must agree to the Terms of Use, forming a valid and enforceable contract under New York law. FINRA breached this contract by: (1) publishing an altered, non-fact-based award in violation of its own standards; (2) bypassing the Terms of Use by allowing the award to be accessed directly through search engines without user agreement; and (3) using metadata and AI tools, including Google Tag Manager, to unlawfully expand the reach of the award to third-party platforms. This breach

---

[1] https://www.finra.org/arbitration-mediation/arbitration-awards/finra-arbitration-awards-online-terms-use

[2] https://www.finra.org/sites/default/files/aao_documents/17-01857.pdf

is separate and distinct from any arbitration-related claim and falls squarely within the scope of a commercial breach of contract action.

3.  FINRA publicly states on its website:

- *"Awards are rendered by independent arbitrators who are chosen by the parties to issue final, binding decisions. FINRA makes available an arbitration forum—pursuant to rules approved by the SEC—but has no part in deciding the award."*

- *"After closing the record, the arbitration panel considers all of the evidence, deliberates together, and decides what relief the claimant is entitled to, if any."*

**Deliberation vs. New Evidence:** While deliberations can continue after the record closes, they must be based solely on the evidence already admitted. Introducing new, post-arbitration submissions without notice to either party violates the finality of the July 2, 2018, Order and constitutes an unlawful act under FINRA's Awards Online Terms of Service, which require that published awards be fact-based and *lawful.*

4.  The July 2, 2018, Order dismissing all claims with prejudice was based solely on the pleadings submitted by both parties. At the time of this Order, see Exhibit A, the record was closed. However, the posted Award, altered the Order filed with the Parties, with no prior notice, falsely stated that the dismissal was based on pleadings, testimony, and post-arbitration filings.

5.  The Award[3] at issue falsely states that Plaintiff's claims were dismissed with prejudice based on "pleadings" when no pleading contained allegations or evidence supporting any sanction or dismissal on those grounds. There was no Panel Order permitting the use of FINRA Rule 12212(c), which requires a material and intentional violation of a prior Panel Order, to impose punitive or monetary sanctions. Sanctions were never mentioned, requested by

---

[3] https://www.finra.org/sites/default/files/aao_documents/17-01857.pdf

Defendants, or considered by the Panel at any point during the hearing or before the final July 2, 2018, Order.

6. Plaintiff includes Exhibit A solely to demonstrate how FINRA's publication of the arbitration award violates the Awards Online Terms of Use and was not "lawful" as the Terms mandate. This exhibit is not intended to challenge the arbitration award itself but to highlight the breach of contract arising from the publication of an altered, non-fact-based Award, under FINRA Awards Terms of Service. Plaintiff does not seek to modify or vacate the arbitration award, only to enforce FINRA's contractual obligation to ensure that published awards adhere to the factual record and comply with the Awards Online Terms of Service.

7. Unlawful Consideration of Post-Arbitration Filings and Panel's Express Limitation: The July 2, 2018, Order explicitly stated that the dismissal with prejudice was **based solely on the pleadings** and that no additional motions or filings would be considered. This establishes the record's closure and limits the scope of deliberation. There is no legal or procedural basis under FINRA's own rules to consider post-arbitration filings after the record is closed. FINRA Rule 12212(c) only permits punitive sanctions when a party violates a Panel Order. Here:

- There was no Panel Order directing further submissions.
- The post-arbitration filings were never part of the evidentiary record. There was no Panel request for "post arbitration briefs" on a certain legal issue.
- No notice was given to either party that such filings would be considered.

8. FINRA's publication of the Award on Awards Online included false, non-factual statements about Plaintiff, such as allegations of "vicious behavior" and "abuse of the arbitration process,"

which were not supported by the evidentiary hearing or digital recordings.[4] These statements

violate the Awards Online Terms of Use, which mandate that published Awards must be fact-

based, lawful, and free from harassing content. By knowingly publishing an Award containing

false and unlawful content[5], FINRA breached its contractual obligation under the Terms of Use.

9. Tampering with Evidence and Missing Digital Recordings: The digital recordings of the

arbitration hearing, particularly tapes 99-100, were reported as "corrupted" by FINRA to

Plaintiff, as confirmed in the DR Portal, and unavailable, potentially containing exculpatory

evidence. FINRA's failure to preserve and consider this evidence, while subsequently publishing

an Award based on incomplete and inaccurate information, violates its obligation under the

Awards Online Terms of Use to ensure fact-based and lawful publications. The absence of

critical evidence further underscores the breach of contract and resulting harm to Plaintiff.

10. Breach of Fact-Based Reporting Obligations: The Terms of Use for Awards Online

explicitly or implicitly require that published Awards reflect the factual outcomes of arbitration

proceedings. By publishing an Award that relied on post-arbitration filings, unsubstantiated

claims, and demonstrably false statements, FINRA knowingly breached its contractual obligation

to ensure that Awards disseminated through its platform are factually accurate and lawful.

11. Intentional Misconduct and Knowing Participation: Digital recordings confirm that FINRA

staff were aware of the false basis for the Award but nonetheless allowed its publication. This

---

[4] Attached is Exhibit D documenting the false and unlawful statements that served as basis for punitive and monetary sanctions.

[5] Attached as Exhibit C is the email from FINRA *confirming that FINRA removed* the former Panel Chair, Lynn H. Brahin. This stated basis for sanctions was entirely fabricated, including the claim that Plaintiff's "viciousness" caused the former panel chair to resign; when in fact, FINRA itself removed the panel chair.  This statement was unlawful -it was never part of the Original July 2, 2018, Order of dismissal.

constitutes not only negligence but intentional misconduct, further breaching the Awards Online Terms of Use, which prohibit the publication of misleading, harassing, or unlawful content.

12. As detailed in Exhibit D, the unlawful false statements, known to FINRA as false as they had direct involvement in many, forming the basis for the sanctions, are not supported by the digital hearing recordings. Plaintiff has not yet obtained an official transcript due to cost but can produce one if the Court deems it essential.

13. FINRA, as the publishing entity, had an obligation to verify that the Award accurately reflected the hearing record. By publishing non-factual statements that were not supported by the evidentiary record, FINRA breached its Terms of Service and facilitated the ongoing harm to Plaintiff.

14. FINRA's publication of the altered award, incorporating non-evidentiary claims, with full knowledge they were created after the record was closed, breached its contractual obligations under the Awards Online Terms of Use.

15. This Complaint does not challenge the arbitration award or seek to vacate it. Rather, it challenges FINRA's independent breach of its contractual obligations under its Awards Online Terms of Use, arising from its publication of a known unlawful Award that includes false, harassing, and non-factual statements.

16. Arbitral immunity does not extend to contractual breaches committed by FINRA as a website forum provider, acting outside its regulatory role.

17. Ongoing Injury and Breach: FINRA continues to breach its contractual obligations by:

- Publishing an unlawful award inconsistent with the Terms of Use.

- Bypassing the Terms of Service agreement for users accessing the award via third-party search engines. (Exhibit E).

- Expanding dissemination through metadata tagging and Google Tag Manager, practices outside the scope of FINRA's regulatory function.

18. **Breach of Contract Claim – Independent of Prior Litigation:** This breach of contract claim arises from FINRA's independent misconduct in publishing and disseminating an unlawful arbitration award on its Awards Online platform, in violation of its Terms of Service. It is separate from the arbitration proceedings and was never addressed by the D.C. courts, in previous Complaint, which solely reviewed defamation claims under D.C. defamation law, dismissing them as time-barred under D.C.'s one-year statute of limitations for defamation.

19. The D.C. courts never adjudicated any breach of contract claims related to FINRA's post-arbitration conduct under the Awards Online Terms of Use. The D.C. district and circuit courts' rulings were limited to defamation and statutory claims, not on FINRA's independent contractual obligations under the Awards Online Terms of Use. This action is wholly distinct from those proceedings as a breach of contract claim; not a tort claim:

- Plaintiff does not seek to vacate, modify, or challenge the validity of the arbitration award under the FAA.

- Contractual Obligations Govern Post-Award Conduct: The FAA governs arbitration proceedings, but it does not extend to FINRA's post-arbitration conduct in administering its Awards Online platform.

- Separate from Regulatory Role: FINRA acted as a commercial service provider, not as a regulator or arbitral body, when it published and disseminated the award in violation of its contractual obligations.

- Continuous Breach Doctrine: Each day the unlawful award remains published represents a new breach, making the claim timely and distinct from any FAA-governed arbitration

issues. No prior court has reviewed this breach of contract claim, which is governed
by New York law and arises independently from FINRA's role as a regulatory body.

- This claim does not seek to vacate the award but instead demands compliance with
  FINRA's contractual obligations under its commercial Terms of Use for the Awards
  Online platform.

This breach of contract claim is legally distinct from prior litigation and not frivolous, as it
challenges ongoing harm from FINRA's ongoing misconduct in publishing and distributing
an unlawful document outside the scope of its contractual Terms of Use. Since the D.C. courts
never addressed these contractual issues, they remain unadjudicated and properly before this
Court. This breach of contract claim arises from FINRA's independent actions as a platform
operator, not from its role as an arbitration forum provider. Accordingly, the FAA does not
preempt this claim, and the D.C. court rulings do not bar this action.  The DC Courts did not
adjudicate FINRA's commercial obligations under the Awards Online platform, which
are independent from FINRA's regulatory role.

## II.    JURISDICTION AND VENUE

20.. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) (diversity
jurisdiction) because the parties are citizens of different states, and the amount in controversy
exceeds $75,000, exclusive of interest and costs. Plaintiff seeks damages in an amount exceeding
$75,000, but not less than $10,000,000, to be determined at trial.

21. This Court also has jurisdiction under 28 U.S.C. § 1331 (federal question
jurisdiction) because the claims involve FINRA, a self-regulatory organization (SRO) governed
by the Securities Exchange Act of 1934. However, Plaintiff's claims do not arise from FINRA's
regulatory functions or any arbitral proceeding. Rather, the claims are based solely on FINRA's

breach of the Awards Online Terms of Service, an independent commercial contract governing the publication of arbitration awards on FINRA's non-regulatory, for-profit website.

22. The Awards Online platform is separate and distinct from FINRA's role as an SRO, operating under commercial terms that form an independent contractual agreement between users and FINRA. The Awards Online Terms of Use explicitly govern access, lawful publication, and dissemination of arbitration awards, outside the scope of FINRA's regulatory functions or arbitral immunity. This claim is based solely on FINRA's breach of the Awards Online Terms of Use, a commercial contract governing the publication of arbitration awards, separate from the underlying arbitration proceedings. The Federal Arbitration Act (FAA) does not govern post-arbitration conduct by third-party platforms, nor does it shield FINRA from liability for breach of contract under New York law.

23. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within the Southern District of New York. Specifically:

- FINRA conducts substantial business operations within New York.

- The Awards Online Terms of Service explicitly require that any dispute arising under the agreement be litigated in the state or federal courts located in New York.

- The breach of contract, unauthorized dissemination, and ongoing harm to Plaintiff occurred through FINRA's New York-based operations and technology platforms.

24. This Court is the proper forum for adjudicating this contract-based dispute. Plaintiff is not challenging the arbitration award itself, nor any regulatory action, but solely FINRA's breach of its commercial obligations under the Awards Online Terms of Use.

25. Defendant FINRA is subject to personal jurisdiction in this district because it regularly conducts business in New York and has designated New York as the exclusive venue for disputes arising from its Terms of Service under its Awards Online website.

26. This action is distinct from prior litigation against FINRA, including a pending petition for rehearing before the U.S. Court of Appeals for the D.C. Circuit regarding a defamation-related claim. The present action is solely focused on FINRA's breach of its own contractual obligations, under its Awards Online Terms of Use including:

- Failure to maintain fact-based and lawful arbitration awards as represented in its publication policies and required by its stated review process, which forms part of the Terms of Service.

- Unauthorized distribution of arbitration awards without requiring users to agree to its Terms of Service.

- Use of AI metadata tagging, and unauthorized analytics tracking in a manner inconsistent with the original agreement and never agreed to by Plaintiff at the time of entering the arbitration contract. FINRA's use of AI, metadata tagging, and unauthorized analytics tracking was inconsistent with the original arbitration agreement, which did not disclose such technologies or secure Plaintiff's consent to their use.

27. In *D'Alessio v. NYSE, Inc.*, 258 F.3d 93 (2d Cir. 2001): Courts have held that self-regulatory organizations (SROs) like FINRA are not entitled to immunity when engaging in for-profit activities unrelated to their core regulatory duties. The Awards Online platform, as a commercial service, falls outside the scope of FINRA's regulatory immunity, further subjecting FINRA to liability for breach of contract.

### III. PARTIES

28. Plaintiff, Susan Seltzer is a resident of the State under seal as filed with the Court, dated February 25, 2025, and former owner of Check the Ticker SBC, an investor education business that was forced to dissolve in late 2021 due to FINRA's ongoing contractual breaches, AI-driven harassment, a derivative document created from Awards Online URL and continued republication of defamatory metadata.

29. Defendant Financial Industry Regulatory Authority (FINRA) is a self-regulatory organization (SRO) registered under the Securities Exchange Act of 1934, with principal offices in Washington, D.C. and New York, New York. While FINRA regulates brokerage firms and market participants, it also operates FINRA Awards Online, a commercial platform governed by independent contractual Terms of Use, distinct from FINRA's regulatory functions.

30. FINRA Awards Online is a Proprietary Commercial Platform. FINRA Awards Online is a proprietary product operated by FINRA for the passive posting of arbitration awards, subject to its Terms of Use; in the interest of investors. These terms form an independent contract between FINRA and users of the platform, governing the lawful publication, access, and use of arbitration awards.

- Intellectual Property and Ownership: According to its own Terms of Service, "FINRA Arbitration Awards Online is a proprietary product and employs proprietary software. FINRA reserves all intellectual property and proprietary rights in and to FINRA Arbitration Awards Online."

- Non-Regulatory Nature: While FINRA operates under SEC-approved rules, the Awards Online platform functions as a commercial service, not a regulatory activity. Its contractual framework governs the dissemination of award documents, the sale of the

awards and user access, creating legal obligations separate from FINRA's arbitral and regulatory functions.

### IV. FACTUAL ALLEGATIONS

31. FINRA Awards Online is a proprietary product and platform operated by FINRA for the passive posting of arbitration awards, subject to its Terms of Use, which govern the lawful publication, access, and use of arbitration awards.

- Proprietary Nature: According to FINRA's own Terms of Service, "FINRA Arbitration Awards Online is a proprietary product and employs proprietary software. FINRA reserves all intellectual property and proprietary rights in and to FINRA Arbitration Awards Online."

- Unlike FINRA's regulatory activities, Awards Online operates as a commercial, for-profit platform, generating advertising revenue and data-driven insights using Google Tag Manager, metadata tagging, and search engine optimization; not previously disclosed to investors who file arbitrations in a FINRA mandated forum.

- The Terms of Use establish an independent contractual agreement between FINRA and users of the platform, governing the lawful publication, access, and use of arbitration awards outside FINRA's regulatory and arbitral roles.

32. While FINRA operates under SEC-approved rules, the Awards Online platform is a separate commercial service, not a regulatory activity. Its contractual framework governs the posting of award documents, creating independent legal obligations enforceable under New York contract law.

33. FINRA's conduct in administering Awards Online is commercial, not quasi-judicial, and does not qualify for arbitral immunity. As held in *Weismann,* contractual obligations arising

from post-arbitration conduct are distinct from arbitration proceedings and can be independently enforced; as they are non-regulatory functions by a commercial enterprise.

34. Plaintiff's claim arises solely from FINRA's conduct as a platform operator, not as a regulator or arbitral forum. By publishing and actively disseminating an unlawful award through the Awards Online platform, FINRA breached its independent contractual obligations, causing ongoing harm to Plaintiff.  The harm claimed herein arises from FINRA's post-arbitration conduct in publishing and disseminating the award in violation of its own Terms of Use. This breach is independent of the arbitration itself, as FINRA's contractual duty to publish only fact-based and lawful awards extends beyond the arbitration proceeding's conclusion.

35. As a proprietary, commercial service, FINRA Awards Online is subject to New York contract law, and FINRA's regulatory status does not insulate it from liability for contractual breaches. FINRA, as a platform operator, must adhere to its contractual obligations under Awards Online, separate from its regulatory role:

36. The July 2, 2018, Order (Exhibit A) dismissing all claims with prejudice was based solely on the pleadings submitted by both parties. At the time of this Order, the record was closed. However, the Award was altered, 65 calendar days later, posted by FINRA at its Awards Online, falsely stated that the dismissal was based on pleadings, *testimony, and post-arbitration filings.*

37. The Award itself states that *"multiple submissions were filed by Claimants; however, they were not considered by the Panel pursuant to the July 2, 2018, Order."*  Furthermore, on July 9, 2018, Respondent USBI confirmed in a document available at the DR Portal, it was not seeking any further relief from the Panel and requested the Panel enter a final Award consistent with the July 2, 2018, Order.

38. Unlawful Modification and Publication of Award: Despite the clear directive from the original July 2, 2018, Order, which dismissed all claims with prejudice based solely on the parties' pleadings, and Respondents' confirmation that no further relief was sought, FINRA Awards Online published an unlawful award that unilaterally modified the final Order. The published award falsely stated that post-arbitration filings were considered and improperly imposed punitive sanctions under FINRA Rule 12212(c). This modification was made without notice to either party, without a Panel Order, and without any evidentiary basis, directly contradicting the final Order's terms.

  This post-arbitration modification constitutes an independent, unlawful act by FINRA as a forum provider, not the arbitrators. It falls outside the scope of arbitral immunity and violates FINRA's own Awards Online Terms of Service, which require that published awards be truthful, lawful, and fact-based. By knowingly publishing a modified Order of dismissal as an altered Award containing fabricated grounds for sanctions, FINRA breached its contractual obligations under the Terms of Use.

  39. Finality of the Hearing Record: The July 2, 2018, Order dismissing all claims with prejudice was final and based solely on the parties' pleadings, as reflected in the Arbitration Information Sheet (AIS) completed during deliberations. FINRA's own procedural guidance to arbitrators confirms:

*"The chair is responsible for making the panel's decision part of the hearing record. After the panel has concluded deliberations and reached a decision, the chair should complete the AIS in the DR Portal. This AIS will be used by DRS staff to prepare the award."*

  Once the AIS was completed and the July 2, 2018, Order was issued, the hearing record was closed, and no further filings were authorized. Respondents accepted the dismissal without

requesting sanctions. Despite this finality, FINRA altered the award to include post-arbitration submissions and punitive and monetary sanctions, without notice to either party or a new Panel Order. This unauthorized modification constituted a material breach of the Awards Online Terms of Use.

40. Breach of Contract and Unlawful Conduct: By knowingly permitting and publishing an Award based on non-evidentiary filings, FINRA:

- Breached its Terms of Use, which require arbitration awards to be lawful, fact-based, and non-defamatory.

- Facilitated an unlawful publication by posting an Award not supported by any evidentiary basis, contrary to FINRA's own rules and representations.

41. Intentional Harassment and Misrepresentation: FINRA's publication of the Award through Awards Online went beyond merely posting an arbitration outcome. FINRA:

- Knowingly tagged the Award to Plaintiff's name, business, professional writings, and online presence, creating an unlawful, harassing, and defamatory digital footprint, based on new technology never disclosed to investors prior to use. FINRA created a new "derivative" document linking the Award in such document to Plaintiff's business filings at the State of Incorporation. (See Exhibit B.)

- Acted with full knowledge that the Award was not fact-based, thereby breaching the Awards Online Terms of Use[6], which explicitly prohibit using the platform for unlawful, misleading, harassing, or defamatory purposes.

---

[6] https://www.finra.org/arbitration-mediation/arbitration-awards/finra-arbitration-awards-online-terms-use "Restrictions: L. use Arbitration Awards Online or the data contained therein in any unlawful, fraudulent, misleading, obscene, harmful, threatening, harassing, defamatory or hateful manner, that invades the privacy of any third party, for any unlawful purpose, or in any manner inconsistent with these Terms of Use;"

**42. Breach of Contract:**

**1. Terms of Service Agreement Requirement:**

The Awards Online Terms of Use explicitly require users to agree to the Terms before accessing arbitration awards. By distributing the Award without such user agreement, FINRA violated its own contractual conditions governing access to its database.

**2. Distribution Through Google Tag Manager (GTM):**

FINRA used Google Tag Manager (GTM) to distribute the Award, bypassing the mandatory Terms of Service agreement. This enabled users to access the defamatory content without acknowledging or accepting FINRA's contractual conditions. Such unauthorized distribution constitutes a material breach of the Awards Online Terms of Use. (See Exhibit E and E-1.)

**3. Availability Through DuckDuckGo and Other Search Engines:**

The Award is also accessible through third-party search engines, including DuckDuckGo, without requiring users to first agree to FINRA's Terms of Service. This further demonstrates FINRA's breach of its own contractual access conditions and its failure to properly enforce its data dissemination policies. (See Exhibit E)

**4. Meta Tagging and Search Engine Optimization (SEO):**

FINRA actively engaged in SEO practices, including meta-tagging Plaintiff's name and business, enhancing the visibility of the false and defamatory Award in search results. These practices ensured that the Award would prominently appear when searching for Plaintiff's name, exacerbating the reputational harm caused by FINRA's breach of contract.

**5. Breach of Investor Protection Purpose:**

The Terms of Use explicitly restrict data usage to purposes such as investor protection,

academic research, or regulatory compliance. FINRA's use of SEO, GTM, and metadata tagging to amplify the Award's visibility—and tie it to Plaintiff's personal reputation, business and personal publications—exceeded these permitted uses and constitutes a material breach of contract.

**6. Non-Fact Based and Harmful Content:**

As detailed in Exhibit D, FINRA knowingly published an Award contained demonstrably false statements, including claims of disruptive behavior and violations of panel orders, none of which are supported by the hearing's digital recordings. Plaintiff has not yet obtained a formal transcript due to cost considerations but stands ready to provide one if the Court deems it essential.

43. FINRA has further breached its Awards Online Terms of Service by improperly indexing the Award in search engines, allowing public access without first requiring users to agree to the Terms of Service, which prohibit using arbitration awards for harassment, unlawful purposes, or defamation. (See Exhibit E)

44. This breach was compounded by FINRA's use of AI tools to create a derivative document (See Exhibit B) from the Awards Online URL, linking the unlawful Award to Plaintiff's business incorporation filings and other professional publications. This targeted action appears unique to Plaintiff, as there is no evidence that FINRA has taken similar actions against other parties or awards published on its Awards Online platform.

45. FINRA's Breach Beyond Arbitration: This complaint does not challenge the arbitration award itself but rather FINRA's independent breach of its contractual obligations under its Awards Online Terms of Use. The intentional online tagging of known false information caused direct harm to Plaintiff and is entirely separate from the arbitration proceeding. The finality of

the arbitration award remains undisturbed. Plaintiff seeks removal of the unlawful Award from FINRA's Awards Online platform solely due to its violation of the contractual Terms of Service.

46. Continued Violation and Harm: FINRA's continued publication of this Award, despite knowledge of its false basis and the improper consideration of post-arbitration filings, constitutes an ongoing breach of contract, causing reputational and professional harm to Plaintiff.

47. This is action is not a challenge under the Federal Arbitration Act, 9 U.S.C. §10.

48. FINRA's Own Standards for Fact-Based Awards:

FINRA publicly states:

*"Awards listed on FINRA Awards Online are considered fact-based, as FINRA rules require arbitrators to make decisions based on the facts of the case and to provide an 'explained decision' when requested, which is a brief, fact-based explanation of the reasoning behind their award; however, not all awards include detailed explanations unless specifically requested by both parties involved in the dispute."*

Key points regarding FINRA Awards:

- Fact-Based Decisions: Arbitrators are obligated to base their decisions solely on the evidence presented during the hearing.

- Finality of the Order: Once the panel issues a final order and closes the hearing record, any modification, including the addition of post-arbitration submissions, is procedurally improper and violates FINRA's own publication standards.

By publishing an unlawful and altered award—which includes fabricated sanctions and post-arbitration submissions never disclosed to the parties—FINRA breached its contractual obligation under the Awards Online Terms of Use which mandate the publication of fact-based and lawful awards.

49. Contractual Breach, Not Defamation: This claim does not arise under defamation law but instead under contract law and unfair business practices, specifically addressing FINRA's failure to abide by the express provisions of its own Terms of Use governing the Awards Online platform. Plaintiff seeks relief solely for FINRA's independent misconduct as a commercial platform operator, not as a regulatory body or arbitral forum.

50. The harm caused by FINRA's actions is ongoing, as FINRA continues to knowingly publish false information[7] that it is contractually obligated to ensure is fact-based and lawful. This continued publication, indexed in search engines and with permission to access the Awards without the mandatory agreement to Terms of Use exacerbates the damage and nullifies any statute of limitations defense, as each instance of republication constitutes a new breach.

51. Under New York law, a contract is formed when there is mutual assent, consideration, and a clear intent to be bound. Here, users, including the undersigned, assent to FINRA's Terms of Use to access Awards Online, which includes an obligation from FINRA to ensure that awards posted are fact-based and do not engage in unlawful acts, harassment or defamation. FINRA has breached this contract by: (1)Misrepresentation: Displaying an award as fact-based when it is

---

[7] An explained decision is a *fact-based award* stating the general reason(s) for the arbitrators' decision. (See Rules 12904(g) and 13904(g).) Legal authorities and damage calculations are not required.  The Award for 17-01857 is unlawful and not fact-based as described herein by FINRA's public statement:

Decision & Award | FINRA.org


_____
finra
https://www.finra.org › arbitration-mediation › decision-...

not.(2) Continuing to host a document that leads to defamation and harassment, contrary to its own Terms of Service and (3) Providing access to Awards without first mandating agreement to its Terms of Service. (See Exhibit E)

52. Breach of Contract and Unlawful Conduct: By knowingly permitting and publishing an Award and tagging it to an investor's name based on non-evidentiary filings, FINRA:

- Breached its Terms of Use, which require arbitration awards to be lawful, fact-based, and non-defamatory.

- Facilitated an unlawful publication by posting an Award not supported by any evidentiary basis, contrary to FINRA's own rules and representations.

53. Intentional Harassment and Misrepresentation: FINRA's publication of the Award through Awards Online went beyond merely posting an arbitration outcome. FINRA:

- Knowingly tagged the Award to Plaintiff's business, professional writings, and online presence, creating an unlawful, harassing, and defamatory digital footprint.

- Acted with full knowledge that the Award was not fact-based, thereby breaching the Awards Online Terms of Service, which explicitly prohibit using the platform for unlawful, misleading, harassing, or defamatory purposes.  Exhibit D includes evidence that the entire basis for sanctions was based on non-factual, unlawful statements.

54. FINRA's Breach Beyond Arbitration: Plaintiff chose not to file a Petition to Vacate the Award. Had Plaintiff been informed prior to arbitration that FINRA would employ search engine marketing, indexing, and AI to distribute the Award, Plaintiff would not have filed the arbitration. This complaint does not challenge the arbitration award itself but rather FINRA's independent breach of its contractual obligations under the Awards Online Terms of Use. The

intentional online tagging of known false information is the direct cause of Plaintiff's harm and is separate from the arbitration proceeding.

55. Improper Indexing and Search Engine Access: FINRA breached its Terms of Service by allowing the Award to be publicly searchable via Google without requiring users to first agree to its Terms, thereby exposing Plaintiff to greater reputational harm and harassment which is ongoing. (See Exhibit E and E-1.)

56. The Award falsely states that the former Panel Chair resigned due to Plaintiff's "viciousness," when in fact, FINRA itself removed the former Panel Chair over six months before the hearing. Attached as Exhibit C is an email from FINRA confirming that the removal was FINRA's executed by FINRA Director of Arbitration, contradicting the Award's claim that the resignation was due to Plaintiff's conduct. Since this was not part of any pleading or evidentiary record, its inclusion in the Award is materially false and misleading and demonstrates FINRA violated its Terms of Use by filing an Award that was not factual.

57. FINRA's Active Data Manipulation and SEO Practices Violating Terms of Use:

1. Indexing with Google: FINRA actively indexed the arbitration award data with Google, ensuring that the Award was structured for easy crawling and indexing by search engines. This practice extended beyond passive publication and demonstrated FINRA's active participation in shaping how the Award appears in search results.

2. Use of Meta Tags: By embedding meta tags specifically referencing Plaintiff's name, business, and personal publications, FINRA intentionally steered search engines to prioritize this false and defamatory content. These meta tags increased the Award's visibility and prominence in search results, thereby amplifying the reputational harm to Plaintiff.

3. Google Tag Manager (GTM): FINRA further utilized Google Tag Manager (GTM) to track user interactions with the Award and manipulate how it appeared in search results. Through GTM, FINRA deployed:

    1. Enhanced Data Tracking: Monitoring user engagement with the Award, feeding back into Google's algorithms to boost its search ranking.

    2. Dynamic Content Insertion: Tailoring how the Award appeared based on user search context, ensuring Plaintiff's name and business were prominently displayed.

    3. Google Analytics Integration: Analyzing traffic patterns to refine the Award's search visibility and SEO ranking.

4. Violation of Investor Protection Purpose: The Awards Online Terms of Use explicitly restrict data usage to purposes of investor protection, academic research, or regulatory compliance. FINRA's use of SEO, GTM, and metadata tagging to amplify the Award's visibility and tie it to Plaintiff's business exceeds these permitted uses and constitutes a material breach of contract.

58. Unauthorized Creation of Derivative Work:  FINRA created a new document from the Awards Online URL that linked the Award to Plaintiff's business and professional online writings and business incorporation records. This violated the Terms of Use, which prohibit users from creating derivative works from Arbitration Awards Online data.

59.  Violation of Data Mining and Scraping Restrictions: The FINRA Awards Online Terms of Use allow data scraping only for investor protection and compliance purposes. Section 11 states:

*"The Arbitration Awards Online data may be copied and compiled, including by use of data mining, scraping, or harvesting tools, <u>solely for investor protection</u>, academic, compliance, or*

*regulatory purposes, provided that you comply with these Terms of Use."*

FINRA's scraping and republishing of data did not serve an investor protection or regulatory

purpose but instead created a false association between Plaintiff's business, online writings, and

the misleading Award, (Exhibit B) resulting in additional reputational harm.

60.  Harm Expansion and Resetting of Statute of Limitations:  The creation of this new

document expanded the reach of the false and unlawful Award to a broader audience,

introducing defamatory and misleading information to potential investors, regulators, and the

public. This derivative work constituted a new republication, resetting the statute of limitations

under New York law (*Rinaldi v. Viking Penguin, Inc.*, 52 N.Y.2d 422 (1981)).

61. See Exhibit B, which demonstrates how FINRA's metadata manipulation and unauthorized

creation of a derivative work through its Awards Online platform linked the arbitration Award to

Plaintiff's business and professional writings. This manipulation, discovered by Plaintiff in

January 2022, resulted in significant reputational harm, including the closure of Plaintiff's online

business. These screenshots were taken contemporaneously with the discovery of the improper

linking in January 2022. Plaintiff will further authenticate the screenshots and associated

metadata during discovery, if disputed. The current Awards Online listing, as shown in the

February 20, 2025, screenshot, no longer includes this improper linking, further underscoring the

abnormal and unauthorized nature of the 2022 derivative work.

62. Exhibit D lists specific non-factual statements contained in the Award, including claims of

disruptive behavior and violations of panel orders, none of which are supported by the digital

hearing recordings. While Plaintiff has not yet obtained a formal transcript due to cost

considerations, Plaintiff stands ready to provide a certified transcript if the Court deems it

essential.  Awards Online is meant to serve as a *factual* repository of arbitration outcomes, and

including knowingly false information defeats this purpose and is a direct breach to Terms of Use.

63. The Awards Online Terms of Use do not mandate immediate action upon initial harm but rather upon notice of a breach. Plaintiff could not have reasonably discovered the full extent of the harm until FINRA utilized new technology, including meta tags, Google Tag Manager (GTM), and knowledge graphs, to expand the Award's visibility and link it to Plaintiff's business and personal publications. This technological manipulation, first observed in 2022, constitutes a new breach, resetting the statute of limitations under New York law.

64. Plaintiff submits Exhibit E, and E-1, demonstrating FINRA's unauthorized data dissemination practices, including:

1. Screenshots showing the Award's accessibility via Google and DuckDuckGo *without* user agreement to the Terms of Use.

2. Evidence of Google Tag Manager (GTM) deployment and associated metadata enhancing the Award's visibility in search results.

3. Search engine results linking the Award to Plaintiff's name, business and personal publications, demonstrating the expanded harm caused by FINRA's breach.

### V. COUNT I – BREACH OF CONTRACT

65. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein. FINRA's Awards Online Terms of Use constitutes a valid and enforceable contract between Plaintiff and FINRA.

66. FINRA materially breached this contract by:

- Knowingly publishing and continuing to disseminate an Award containing false statements, FINRA engaged in an ongoing breach of its Awards Online Terms of Use.

This ongoing publication extends the harm to Plaintiff and compounds the damage to personal and professional reputation and livelihood.

- Publishing and distributing a non-fact-based and unlawful arbitration award, contrary to its own publication policies and the Terms of Use requiring awards to be lawful, fact-based, and non-defamatory.

- Removing prior access restrictions, which previously required users to agree to the Terms of Use before accessing arbitration awards, including Plaintiff's repeatedly.

- Expanding data dissemination through AI, metadata tagging, and JavaScript nodes, without prior notice or Plaintiff's consent, resulting in the creation of unauthorized links between the Award and Plaintiff's business and professional records.

- Creating a prohibited derivative work by modifying the original Award to link it to external records about Plaintiff, in direct violation of the Awards Online Terms of Use, which prohibit modifying or creating derivative works from arbitration awards.

- Knowing Participation: The involvement of FINRA staff, as confirmed by the digital recordings, in crafting or allowing an Award that they knew was false, indicates not just negligence but intentional misconduct. This directly breaches the trust and legal obligations inherent in managing a platform like Awards Online.

67. FINRA further breached the Awards Online Terms of Use by engaging in active data manipulation through Google indexing, meta-tagging, and Google Tag Manager (GTM). These practices enhanced the visibility and prominence of the false and defamatory Award, ensuring its continued association with Plaintiff's name, business and personal publications. Such conduct exceeds the permitted purposes outlined in the Terms of Use, which restrict the dissemination of arbitration award data solely for investor protection, academic, or regulatory purposes. FINRA's

active participation in search engine optimization and metadata manipulation constitutes a clear and ongoing breach of its contractual obligations under the Awards Online platform.

68. Moreover, the harm Plaintiff suffers is ongoing and continuous, as FINRA continues to republish the unlawful award daily, without mandating Agreement to its Terms of Use, causing ongoing reputational damage and economic loss. Under the republication doctrine recognized in New York law (*Rinaldi v. Viking Penguin, Inc.*, 52 N.Y.2d 422 (1981)), each day the award remains online constitutes a new breach, resetting the statute of limitations.

69. FINRA's Awards Online platform operates outside its regulatory capacity under the Securities Exchange Act of 1934. *D'Alessio v. NYSE, Inc.*, 258 F.3d 93 (2d Cir. 2001), holds that self-regulatory organizations (SROs) like FINRA lose immunity when acting outside their regulatory role, as here, where FINRA operates Awards Online as a commercial product governed by contractual terms, not regulatory mandates. FINRA's publication of false content, without adherence to the platform's own standards, falls squarely outside its arbitral or regulatory immunity.

70. In *Specht v. Netscape Commc'ns Corp.,* 306 F.3d 17 (2d Cir. 2002), the Second Circuit confirmed that platform operators are bound by their own Terms of Service, and failure to comply constitutes actionable breach of contract. Here, FINRA's breach is clear: it continues to engage in prohibitive actions, such as data scraping, creation of derivative works and is publishing an unlawful and non-fact-based award. Further it is bypassing its own agreement requiring users to accept the Terms of Use before accessing awards, as demonstrated on Exhibit E.

71. As a direct and proximate result of FINRA's breach of contract, Plaintiff has
suffered severe reputational and financial harm, including irreparable damage to professional
standing and the loss of business and livelihood.

72. The false and defamatory statements published in the Award, as detailed in Exhibit D, lack
any evidentiary basis in the hearing record; as FINRA participated in these actions. These
statements are not reflected in the digital recordings of the proceedings.

73. FINRA's Duty of Care and Negligence (Implied Duty to Correct): Even if the Awards
Online Terms of Use do not explicitly mandate correction of inaccurate publications, there exists
an implied duty for FINRA to retract or amend harmful content once it becomes aware of its
falsity. By knowingly continuing to publish the false Award after being notified of its
inaccuracies, FINRA further breached its contractual obligation to maintain a fact-based and
lawful awards database.  Plaintiff's claims do not seek to challenge the arbitration award or the
panel's interpretation of FINRA rules. This Complaint addresses FINRA's independent breach of
its Awards Online Terms of Use. FINRA's publication of the award through its commercial
website, use of metadata, and search engine indexing are non-judicial acts outside the scope of
any arbitral immunity or rule interpretation. Accordingly, FINRA cannot rely on the discretion
afforded to arbitrators as a defense to its contractual obligations

## VI.  STATUTE OF LIMITATIONS & CONTINUOUS BREACH DOCTRINE

74. The statute of limitations for breach of contract in New York is six years (*N.Y. C.P.L.R. §
213(2)*). Since FINRA republished the Award in 2022 through an expanded Awards Online
system linking it to Plaintiff's business and professional writings, a "derivative work,"  (Exhibit
B) this constitutes a new and distinct harm that resets the statute of limitations.  Since FINRA
continues to publish the Award, as cited above, without mandating agreement to its Awards

Online Terms of Use, the harm is continuous, and this constitutes a new and distinct harm that resets the statute of limitations.

75. Continuous Breach Doctrine: Since FINRA's ongoing publication of the misleading Award is an ongoing breach, each day that the Award remains available constitutes a continuing violation under contract law, further preventing the statute of limitations from expiring.

## VII. LEGAL BASIS FOR BREACH OF CONTRACT CLAIM

76. This breach of contract claim is independent of the arbitration Award. This case does not seek to vacate or modify the arbitration award itself but challenges FINRA's independent post-arbitration conduct in breaching the Awards Online Terms of Use. The harm did not arise from the arbitration decision but from FINRA's improper publication and dissemination of the award in violation of its contractual obligations. The contractual relationship between Plaintiff and FINRA through the Awards Online platform is separate from the arbitration process and arose after the Order was finalized and FINRA's publication of an altered Order as "Award."

77. Under the FAA, the 90-day limit applies only to challenges aimed at vacating or modifying the arbitration award itself (9 U.S.C. § 12). This breach of contract claim does not seek to disturb the finality of the arbitration award, which remains intact. Instead, it challenges FINRA's unlawful post-award conduct in managing the publication of the award. Courts have recognized that post-arbitration conduct, such as improper dissemination or breach of platform terms, can give rise to a separate cause of action. Because the harm only materialized when FINRA expanded dissemination through metadata, AI, and search engine indexing, the cause of action did not accrue until those breaches occurred—well after the 90-day period for vacatur under the FAA had expired and with no prior notice. Plaintiff was under no legal obligation to

challenge the arbitration award itself within 90 days, as the harm did not originate from the arbitration decision but from FINRA's post-arbitration misconduct; breach of Terms of Use at Awards Online.

78.  Under New York law, a breach of contract claim accrues when the breach occurs, not when the contract is signed, or the arbitration concludes. In this case, the breach occurred when FINRA used new technology (metadata, Google Tag Manager, etc.) to republish the award in a manner inconsistent with its Terms of Use. This breach was not discoverable until the award began appearing in search engines linked to Plaintiff's business and personal online presence, well after the arbitration concluded.  *Rinaldi v. Viking Penguin, Inc.,* 52 N.Y.2d 422 (1981) established that the republication doctrine applies when content is disseminated to a new audience, resetting the statute of limitations.

79. Under New York law, a breach of contract claim requires: (1) A valid and enforceable contract (*First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998)). (2) Plaintiff's performance under the contract (*Harris v. Seward Park Hous. Corp.,* 79 A.D.3d 425 (1st Dep't 2010))—here, the FINRA Awards Online Terms of Service constitutes an enforceable agreement governing the publication and dissemination of arbitration awards. Plaintiff performed under the contract by adhering to the platform's terms, relying on FINRA's representations that published awards would be lawful, fact-based, and non-defamatory. (3) Defendant's failure to perform its contractual obligations. And (4) Damages resulting from the breach (*Mendel v. Henry Phipps Estates, Inc.*, 86 N.Y.2d 847 (1995)).

80. Here, FINRA materially breached its Awards Online Terms of Use by publishing and disseminating an unlawful award, violating its contractual duty to ensure fact-based and lawful

publications. In *Bi-Economy Market, Inc. v. Harleysville Ins. Co. of N.Y.*, 10 N.Y.3d 187 (2008), the New York Court of Appeals emphasized the importance of good faith performance in contracts. FINRA's conduct demonstrates a clear failure to uphold its duty of good faith and fair dealing under the Awards Online platform.

81. Plaintiff is a third-party beneficiary of the FINRA Awards Online Terms of Use, which were established to protect investors from the publication of unlawful, misleading, harassing, or defamatory content. As an investor and participant in the arbitration process, Plaintiff relied on FINRA's contractual obligation to ensure that published awards would be factual, lawful, and non-defamatory. Plaintiff's benefit is sufficiently immediate to impose a duty on FINRA to uphold these protections. FINRA's publication of an unlawful award breached this duty, resulting in ongoing harm to Plaintiff.

82. Enforceability of Terms of Service Clickwrap agreements, like the Awards Online Terms of Use, are enforceable under federal and New York law. Courts have held that users are bound by such agreements when they affirmatively agree to terms before accessing a service:

1. *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17 (2d Cir. 2002): Terms of Service are binding when users must agree before accessing content.

2. *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 840 (S.D.N.Y. 2012): Clicking "I agree" constitutes valid acceptance of a contract.

3. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017): Enforcing an agreement where users had to agree to terms before accessing services.

Since FINRA requires users to agree to the Terms of Use before accessing Awards Online, a valid contractual relationship exists. FINRA's breach of these terms is actionable under New York contract law.

83. Post-Arbitration Breach Is Actionable -New York courts recognize that post-transaction conduct, including post-arbitration platform activity, can support a breach of contract claim:

1. *Hines v. Overstock.com, Inc.*, 380 F. App'x 22 (2d Cir. 2010): Holding platform operators liable for breaches arising from non-compliant content publication. Defendant FINRA requires all users of the Awards Online platform, including Plaintiff, to affirmatively accept the platform's Terms of Use before accessing arbitration awards. Unlike *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 25 (2d Cir. 2010), where the user had no actual or constructive knowledge of the terms, Plaintiff was presented with the Terms of Service as a mandatory condition for accessing the platform. This constitutes a valid and enforceable agreement under New York law (*Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 840 (S.D.N.Y. 2012); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017)). FINRA's subsequent breach of this agreement, including its failure to uphold the contractual promise of lawful and factual publication, gives rise to this claim.

Here, FINRA's breach arose after the arbitration concluded, when it published the award in violation of its platform's Terms of Use, as cited herein and evidenced in multiple Exhibits. This conduct falls outside the scope of the arbitration itself.

84. Commercial Platform Liability – Separate from its "Regulatory Role" FINRA's Awards Online operates as a commercial, for-profit platform distinct from its regulatory role, creating independent contractual obligations. FINRA's ongoing commercial entity, Awards Online, fails to enforce the Terms of Use before access constitutes a material breach, independent of any arbitration proceedings, as demonstrated in Exhibit E whereby FINRA permits unauthorize access without agreement to it Terms of Service.

1. In *Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140 (E.D.N.Y. 2017), the court reaffirmed

   that Section 230 immunity protects platforms from liability for third-party content but

   does not extend to independent actions taken by the platform itself. While *Facebook*

   prevailed because it did not materially alter the content, the court recognized that

   immunity would not apply if the platform engaged in conduct beyond passive hosting.

   Here, FINRA's conduct—metadata tagging, AI-generated derivative works, and

   distribution through search engines—constitutes active manipulation of the award's

   presentation, breaching its Awards Online Terms of Use and causing ongoing harm to

   Plaintiff. Platforms can be held liable for contractual breaches and harmful content

   dissemination.  The court held that while platforms are immune for user content, they are

   not immune when they shape or manipulate that content. FINRA's use of GTM,

   metadata, and derivative tagging reflects such conduct. (Exhibit B)

2. As in *D'Alessio v. NYSE, Inc.*, 258 F.3d 93 (2d Cir. 2001) self-regulatory organizations

   (SROs) are not immune when acting outside regulatory functions.  FINRA's management

   of *Awards Online,* including data dissemination and search engine optimization, falls

   outside its SRO oversight role. The Second Circuit in *D'Alessio* explicitly stated that SRO

   immunity does not apply to non-regulatory conduct. Just as the NYSE could be liable for

   non-regulatory misrepresentations, FINRA can be held liable for breaching the *Awards*

   *Online* Terms of Use, a commercial contract governing content dissemination. FINRA's

   breach arises after the arbitration concluded, based on how FINRA chose to publish and

   distribute the award—not from the arbitration itself. This parallels the *D'Alessio* finding

   that post-regulatory conduct does not enjoy immunity.

3. In *Force v. Facebook, Inc.,* 934 F.3d 53 (2d Cir. 2019), the court confirmed that algorithms merely amplifying content are protected. However, if the platform actively manipulates the content's presentation, (Exhibit B) as FINRA did, immunity does not apply.

4. In *Carvel Corp. v. Diversified Mgmt. Grp., Inc., 930 F.2d 228, 232 (2d Cir. 1991,* A breach occurs when a party fails to perform any contractual duty without legal justification. FINRA's failure to adhere to its Terms of Use—by publishing an unlawful award and bypassing Terms of Agreement conditions—constitutes a breach.

5. *First Investors Corp. v. Liberty Mut. Ins. Co., 152 F.3d 162, 168 (2d Cir. 1998)* Emphasizes that an enforceable contract requires performance by both parties, and failure to perform gives rise to a breach claim. FINRA failed to perform its contractual obligation to publish lawful, fact-based awards and act in investors' interest.

6. *Harris v. Seward Park Hous. Corp.,* 79 A.D.3d 425 (1st Dep't 2010) reinforced the requirement for platform operators to adhere to contract terms, especially when users rely on those terms to protect their interests.

FINRA's commercial use of data through Awards Online, including sales to entities like Potomac Analytics, further demonstrates that the platform operates as a for-profit service outside the scope of regulatory immunity.

85. Arbitral immunity does not extend to independent commercial conduct by a platform provider. See *Weissman v. Nat'l Ass'n of Sec. Dealers, Inc.,* 500 F.3d 1293 (11th Cir. 2007): This case examines the circumstances under which a self-regulatory organization like FINRA (formerly NASD) may be subject to liability for actions that are not part of its regulatory duties. FINRA AWARDS ONLINE is a separate commercial entity not overseen by the SEC.

86. This breach of contract claim against FINRA under the Awards Online Terms of Use is separate from any challenge to the arbitration award itself. The claim does not seek to vacate the award under the Federal Arbitration Act (FAA) but rather to enforce the independent contractual obligations FINRA assumed under the Terms of Use governing the Awards Online platform.

Since Plaintiff's claim challenges FINRA's post-arbitration breach of the Awards Online Terms of Use, not the arbitration itself, arbitral immunity does not apply. Here, the ongoing publication  through derivative documents, meta tags and Google marketing efforts of the unlawful award has caused severe reputational and professional harm, warranting injunctive relief requiring the removal of the award from Awards Online.

## VIII.  CONCLUSION

Based on the foregoing authorities, FINRA's conduct constitutes a clear breach of the Awards Online Terms of Use, entitling Plaintiff to both monetary damages and specific performance. Since this claim arises solely from post-arbitration conduct governed by FINRA's contractual obligations, it is separate from the underlying arbitration and prior D.C. court proceedings.

## IX.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and provide the following relief.  Plaintiff does not seek to vacate or modify the arbitration award but solely to enforce FINRA's contractual obligation to ensure published awards comply with the Terms of Use, as required under New York contract law.  Plaintiff respectfully requests:

A. A declaration that FINRA has materially breached its Awards Online Terms of Use.

B. An order compelling FINRA to remove the false and misleading Award from its website and database, as it violates FINRA's own Terms of Use.

C. An order requiring FINRA to prevent Awards from appearing in public search results

without first requiring users to agree to its Terms.

  D. A declaration that FINRA's creation of a derivative work by linking the Award to Plaintiff's

business and online records violates its Terms of Use and expands harm to a new audience.

  E. An order declaring that FINRA's continued publication of the false Award constitutes

harassment and violates the restrictions against unlawful, misleading, and defamatory use under

its Terms of Use.

  F. An award of damages in an amount to exceed $75,000 but not less than $10,000,000

consistent with recent cases involving similar reputational and economic harm to financial

professionals.

  G. Such other relief as this Court deems just and proper.

**JURY DEMAND**

  Plaintiff acknowledges the Terms of Use but does not waive any legal arguments concerning

the enforceability of the jury waiver.[8]

Respectfully submitted,                                    DATED:  February 25, 2025


                      *Susan Seltzer*
/s/_____
Susan Seltzer
Pro Se Litigant
Seltzers1971@gmail.com

---

[8] Plaintiff acknowledges the jury trial waiver in the Terms of Use but reserves the right to
challenge its enforceability based on contractual fairness and public policy concerns.