CASE NO.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

Susan Seltzer

*Plaintiff*

v.

**FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.**,

*Defendant.*

**EXHIBIT E – DEMONSTRATION THAT FINRA's actions were not merely passive publication but involved active management and dissemination of the award, breaching their contractual obligations and amplifying the harm caused.**

**EXHIBIT E-1 – Demonstrates the underlying Code that FINRA used through Google Tag Manager to manipulate tags, known to be false and unlawful, to harm Plaintiff's personal reputation.**

1. Unauthorized Access Without Agreement to Terms of Service:
   - The screenshots from DuckDuckGo demonstrate that the arbitration award PDF can be accessed directly without requiring users to agree to the Terms of Service, as mandated by FINRA's website policies.

The URLs and timestamps from the DuckDuckGo searches, showing direct access to the PDF.



**2.** Google Tag Manager (GTM) and Meta Data Usage – Inserted to this Example is a PDF of FINRA's Underlying Code tagging the defamation to Mrs. Seltzer's name in Google Search, that occurred repeatedly, constituting harassment and forcing dissolution of her online business.

   Google Tag Manager (GTM) is a tool commonly used by website operators to manage and deploy marketing and tracking tags on their websites. These tags control how search engines like Google and DuckDuckGo index website content and how users interact with it.

Here's how GTM relates to this case:
- **Tagging and Tracking:** The evidence from the FINRA arbitration award page shows that GTM (GTM-PX5XDBN) was actively used. This means FINRA was not passively hosting the award but was managing how the content was tracked and presented online.
- **Meta Tags:** Meta tags, such as "google-site-verification" and "canonical", were included in the page's code. These tags are designed to optimize search engine indexing and visibility.
- **Direct Impact:** This metadata and GTM usage facilitated the creation of a digital footprint tied to the Plaintiff's name, ensuring the arbitration award appeared prominently in search results.

- **Impact of GTM and Search Engine Indexing**

The use of GTM and metadata not only made the award more visible but also amplified its impact by:
- Search Engine Optimization (SEO): GTM allows website administrators to adjust keywords and meta descriptions, ensuring the award appears in search results for the Plaintiff's name, business, and professional work.
- Data Layer Tracking: GTM includes a feature called the "data layer," which tracks user interactions with specific content. This means that every time someone viewed or clicked the award, it informed search engines that the page was relevant, boosting its visibility.
- Direct Linking: As shown in the screenshots, the PDF of the arbitration award was directly indexed by DuckDuckGo and Google. This bypassed FINRA's requirement for users to agree to Terms of Service before accessing the award.
- Why It Matters:
  This level of indexing and tracking, facilitated by GTM, directly contradicts the Terms of Service and demonstrates that FINRA had both the ability and intent to control how the award was presented online. It also expands the scope of harm, as the Plaintiff's name and business were now tied to the defamatory award across multiple platforms, violating the intended non-harassing, fact-based purpose of the Awards Online platform.

Violation of Terms of Service:
- FINRA's Terms of Service for Awards Online stipulate that users must accept the terms before accessing the content. By allowing search engines to bypass this requirement, FINRA violated its own agreement with users.
- The bypassing of access controls facilitated the widespread distribution of defamatory and non-fact-based content, which would not have been possible if the terms were properly enforced.

Impact of GTM and Search Engine Indexing:

- GTM's usage enables tracking, meta-tagging, and enhanced visibility on search engines, further expanding the reach of the defamatory award.
- The award's availability through search engines like DuckDuckGo increases the harm caused by FINRA's breach.
- By creating the derivative document, Exhibit B, FINRA was able to track data analytics on her for-profit corporation, Check the Ticker SBC, which one would deem an anti-competitive action by FINRA.

**Expanded Explanation of Data Analytics Harm to Plaintiff:**

By creating the derivative document and embedding metadata through Google Tag Manager (GTM) and other tracking tools, FINRA gained the ability to collect detailed analytics on user interactions with the arbitration award linked to Plaintiff's for-profit corporation, Check the Ticker SBC. This data collection not only violated FINRA's own Terms of Service but also caused additional harm to Plaintiff in the following ways:

1. Targeted Traffic and Business Interference:
    - The derivative document, created from the original arbitration award, was designed to tag the Plaintiff's business and professional online presence. Through GTM, FINRA was able to track search queries, page views, and user interactions related to Check the Ticker SBC, creating a profile of traffic patterns.
    - This tracking effectively redirected potential clients, collaborators, and investors from Plaintiff's business website to the defamatory arbitration award, deterring business opportunities and damaging professional relationships.
2. Anti-Competitive Action:
    - By leveraging analytics to track and link the arbitration award to Plaintiff's business, FINRA effectively undermined the commercial viability of Check the Ticker SBC. This action can be deemed anti-competitive, as it involved a self-regulatory organization (SRO) using its authority and technological infrastructure to harm a private business.
    - This level of tracking is typically associated with marketing and competitive intelligence, not regulatory compliance. It demonstrates that FINRA was not acting as a neutral forum provider but rather engaging in conduct that disadvantaged Plaintiff's business.
3. Invasion of Privacy and Profiling:
    - The use of Google Analytics, GTM, and metadata tagging enabled FINRA to compile a digital profile of users who viewed or interacted with the derivative document. This included IP addresses, geographic locations, devices used, and browsing habits.
    - Such profiling extended beyond the arbitration award itself, as it encompassed the Plaintiff's broader online presence, including her business incorporation filings, professional publications, and personal website.
4. Economic Harm and Business Loss:

- The targeted data tracking and redirection of traffic from Check the Ticker SBC resulted in loss of business revenue, reputational harm, and diminished online visibility.
- Prospective clients and business partners who searched for Plaintiff's business were instead directed to the defamatory arbitration award, resulting in the dissolution of Plaintiff's online business operations.

5. Violation of Terms of Service and Data Integrity:
    - The FINRA Awards Online Terms of Service prohibit the use of data mining, scraping, or tracking for purposes other than investor protection, academic, compliance, or regulatory functions. By creating the derivative document and enabling tracking through GTM and analytics platforms, FINRA violated its own contractual obligations.

**Conclusion**

Through the creation of the derivative document and the use of advanced data analytics, FINRA engaged in conduct that extended far beyond passive publication of an arbitration award. This conduct not only breached the Awards Online Terms of Service but also resulted in anti-competitive harm, invasion of privacy, and economic injury to Plaintiff and her business, Check the Ticker SBC. This misuse of technology underscores FINRA's active role in facilitating reputational and professional harm, making it liable for breach of contract and related damages.